UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITE HERE LOCAL 74, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV00747 ERW |
| ) | |
| PINNACLE ENTERTAINMENT, INC., ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion for Judgment on Pleadings [doc. #15], and Plaintiff's Motion for Judgment on the Pleadings [doc. #23].

## I. BACKGROUND[1]

Plaintiff Unite Here Local 74 ("Plaintiff") is a labor organization representing employees in an industry affecting commerce within the meaning of Sections 2(4)-(7) and Section 301 of the Labor Management Relations Act ("LMRA") of 1947, as amended, 29 U.S.C. § 185. The Union maintains an office and place of business within this judicial district. Defendant Pinnacle Entertainment, Inc. ("Defendant") is a Delaware corporation authorized to do business in Missouri. Defendant is the owner of Casino One Corporation, which is a Mississippi corporation that is authorized to conduct business in the State of Missouri. Casino One Corporation is

---

[1]The summary of relevant facts is based on those allegations in Plaintiff's Complaint which Defendant has admitted. These facts are appropriately considered undisputed. Additionally, the Court includes relevant provisions from the Memorandum of Agreement ("MOA") at issue in this case.

registered with the Missouri Secretary of State to conduct business under the name River City Casino.

On or about May 17, 2006, Plaintiff and Defendant entered into a Memorandum of Agreement ("MOA"). The MOA mentions two entertainment complexes: "Complex 1" refers to Lumiere Place, while "Complex 2" refers to River City Casino. The relevant provisions of the MOA are as follows:

> 3. This Agreement shall cover "Employees" defined as all the employer's employees employed at Complex 1 in the bargaining units listed in Exhibit A (referred to herein as "Unit" and collectively as "Units"). Upon concluding collective bargaining agreements for all of the units at Complex 1, this agreement shall be extended to Complex 2. Employees in each Unit of the Complexes will constitute a separate bargaining unit, because each Unit will maintain its own separate and distinct community of interest. The parties agree that any collective bargaining agreement reached, together with any amendments agreed to by the parties in a Unit at Complex 1 may, at the Employer's discretion, cover the same Unit at Complex 2 at such time the Union is recognized.
>
> 4. The procedures set forth below shall apply separately to each Unit at each Complex, and any time frames (paragraph 17) and notice requirements (paragraphs 9, 10, and 11) shall run independently for each Unit.
>
> \* \* \*
>
> 9. If the Union provides written notice to the Employer of its intent to organize Employees covered by this Agreement, the Employer shall provide access to its premises and to such Employees by the Union. The Union may engage in organizing efforts in non-public areas of the gaming facility during Employees' non-working times (before work, after work, and during meals and breaks) and/or during such other periods as the parties may mutually agree upon.
>
> 10. Within ten (10) days following receipt of written notice of intent to organize Employees, the Employer will furnish the Union with a complete list of Employees, including both full and part-time Employees, showing their job classifications, departments and addresses. Thereafter, the Employer will provide updated complete lists monthly.
>
> \* \* \*

> 16. The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration, with Robert G. Bailey serving as the Arbitrator. If he is unavailable to serve within thirty (30) calendar days of notification then Joseph Rohlik, or another mutually acceptable person, shall be the Arbitrator. The Arbitrator shall have the authority to determine the arbitration procedures to be followed. The Arbitrator shall also have the authority to order the non-compliant party to comply with this Agreement. The parties hereto agree to comply with any order of the Arbitrator, which shall be final and binding, and furthermore consent to the entry of any order of the Arbitrator as the order or judgment of the United States District Court for the Eastern District of Missouri, without entry of findings of fact and conclusions of law.
>
> 17. This Agreement shall be in full force and effect with respect to each Unit at each complex from the date of execution by both parties until twenty-four (24) months following the full public opening of that Complex, and shall expire at the end of that term with respect to all Units at each Complex, or if sooner, upon execution of a collective bargaining agreement which concludes the collective bargaining agreement negotiations for a Unit and explicitly supersedes this document.

(Def.'s Ex. A, doc. #17-1).

The River City Casino, or Complex 2, experienced a full public opening on or about March 4, 2010. On or about March 5, 2010, Plaintiff gave written notice to Defendant of its intent to organize the persons employed at River City Casino, and requested access to this facility and a list of employees. On or about March 16, 2010, Plaintiff demanded that Defendant proceed to arbitration on Plaintiff's contention that Defendant violated the MOA by failing to provide the above-referenced employee list. Defendant refused to submit the dispute to arbitration. On April 28, 2010, Plaintiff filed the present lawsuit against Defendant in the United States District Court for the Eastern District of Missouri, asserting that Defendant breached the MOA by refusing to submit the dispute to binding arbitration, in violation of Section 301 of the LMRA, 29 U.S.C. § 185. Defendant argues that the MOA is by its own terms inapplicable to River City Casino, and it is not obligated to arbitrated claims related to that complex. Their argument is based on the

undisputed fact that Plaintiff and employees of Defendant's Complex 1 (Lumiere Place) have not executed a collective bargaining agreement.[2] On August 10, 2010, Defendant filed the pending Motion for Judgment on Pleadings [doc. #15]. Shortly thereafter, Plaintiff filed its own Motion for Judgment on the Pleadings [doc. #23].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, this Court will "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004). This is a strict standard, as "[j]udgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). As summarized in Federal Practice and Procedure:

> [A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.

5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d ed. 2010).

---

[2]The Court considers this fact to be undisputed because both parties assume it to be true, and rely on it, in their Motions for Judgment on the Pleadings. Moreover, neither party has presented evidence or argument suggesting otherwise. As this Court later quotes from Federal Practice and Procedure, it is appropriate for a court considering a motion for judgment on the pleadings to consider matters that are central or integral to the claim for relief or defense. *See supra* Section II. As will be revealed in the discussion herein, this is such a matter.

**III. DISCUSSION**

The first issue that this Court must address is whether there are any material issues of fact that remain to be resolved. If such issues of fact exist, this Court cannot grant judgment on the pleadings. Although there are some factual disputes in this case, the Court believes that the facts that are relevant to determining whether the MOA applies with respect to the River City Casino, and if so, whether it requires the parties to submit their dispute to arbitration, are undisputed. These are the facts set forth in the "Background" section of this Opinion. If the Court determines that, based solely on the undisputed facts set forth above, either party is entitled to judgment as a matter of law, judgment on the pleadings can accordingly be granted in this case.

In order to determine if either party is entitled to judgment as a matter of law, the Court must examine the applicable legal standards with respect to the enforcement of arbitration agreements in the labor context. The United States Supreme Court has clearly established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under [section] 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . . ." *Id.* "Doubts should be resolved in favor of coverage." *Id.* at 583. The Eighth Circuit has noted that "there are two gateway questions of 'arbitrability' for courts to decide": first, "whether the parties have a valid arbitration agreement that binds them," and second, "whether a valid arbitration agreement applies to the subject matter at hand." *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493*

*v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004). It is clear, "'procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.'" *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

Accordingly, the only issues before this Court at this time are, first, whether Plaintiff and Defendant are bound by a valid arbitration agreement, and second, whether that arbitration agreement applies to the subject matter of the parties' dispute. The latter issue is not heavily contested, as it is relatively clear that a dispute over an alleged violation of paragraph 10 of the MOA (specifically, Defendant's refusal to provide Plaintiff with a list of employees) falls within the parameters of the MOA arbitration provision, contained in paragraph 16. That provision states, "The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration."

The dispute between the parties reaches its culmination with respect to the issue of whether the arbitration agreement contained in the MOA is binding on the parties. Although the respective parties spend a significant amount of time arguing this issue, this Court believes that the analysis is actually rather straightforward. Paragraph 3 of the MOA specifically states,

> This Agreement shall cover "Employees" defined as all the employer's employees employed at Complex 1 in the bargaining units listed in Exhibit A (referred to herein as "Unit" and collectively as "Units"). Upon concluding collective bargaining agreements for all of the units at Complex 1, this agreement shall be extended to Complex 2.

(Def.'s Ex. A, doc. #17-1, ¶3). Thus, upon execution, the MOA (referred to in paragraph 3 as "this agreement") was binding only as to the employees of Lumiere Place, and not those at River City Casino (which was not even open at the time). The parties expressly agreed that the MOA

6

would be extended to River City Casino employees when (or if) collective bargaining agreements were completed for each of the bargaining units at Lumiere Place. However, the employees of Lumiere Place have not entered into any type of collective bargaining agreement with Plaintiff. As a result, the MOA was never extended to employees of River City Casino, and its provisions, including the arbitration provision and the provision requiring Defendant to provide Plaintiff with a list of employees, are not binding on Defendant with respect to its River City Casino.

Plaintiff argues that this outcome is contrary to paragraph 17 of the MOA, which provides:

> This Agreement shall be in full force and effect with respect to each Unit at each complex from the date of execution by both parties until twenty-four (24) months following the full public opening of that Complex, and shall expire at the end of that term with respect to all Units at each Complex, or if sooner, upon execution of a collective bargaining agreement which concludes the collective bargaining agreement negotiations for a Unit and explicitly supersedes this document.

(Def.'s Ex. A, doc. #17-1, ¶3). This Court disagrees, and believes that paragraph 3 and paragraph 17 are wholly compatible, even necessary. Paragraph 17 establishes a specific duration of time for which the MOA as a whole, including paragraph 3, is enforceable and effective. Regardless of when or if the employees of Lumiere Place execute a collective bargaining agreement with Plaintiff, the MOA is only *enforceable* with respect to River City Casino for 24 months after March 4, 2010. If no collective bargaining agreements are executed during this time period, the terms of the MOA are not binding as to River City Casino (under the terms of paragraph 3). If all of the necessary collective bargaining agreements are executed during the 24 month time period, while the MOA is still enforceable, the terms of the MOA would become binding as to River City Casino. However, if all of the necessary collective bargaining agreements

7

are executed outside the 24 month time period (i.e., the final necessary agreement is executed in April of 2012), the MOA would no longer be enforceable and its terms would not be binding as to River City Casino. Without paragraph 17, Plaintiff could execute the final necessary collective bargaining agreement many years into the future (i.e., in 2050), and still require Defendant to comply with the MOA as to River City Casino. Thus, the purpose and necessity of paragraph 17 is clear, and its terms are not in conflict with paragraph 3, or with this Court's conclusion herein.

Plaintiff also argues that the issue of whether the condition set forth in paragraph 3 makes the MOA inapplicable to River City Casino is one that should be decided by the arbitrator, and not this Court. This argument is flawed because the case law Plaintiff relies on is inapposite to the issue at hand. The cited cases establish that an issue involving a condition precedent *to arbitration* is a procedural arbitrability issue that is properly decided by the arbitrator. *See Int'l Bhd. of Elec. Workers, Local Union No. 124 v. Smart Cabling Solutions, Inc.*, 476 F.3d 527, 529-30 (8th Cir. 2007) (finding that the defendant's argument that "a condition precedent for arbitration was not satisfied" was "procedural in nature, and therefore should have been presented before the [arbitrator]"); *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004) (noting that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide"). However, the issue in this case is not whether a condition precedent to arbitration was met, rather, it is whether a condition has been met that would make the entire agreement (including the arbitration provision) binding on Defendant with respect to River City Casino. This issue is substantive and is squarely within the realm of this Court. *See Smart Cabling Solutions*, 476 F.3d at 529

8

("Whether the parties have a valid arbitration agreement that binds them is substantive and therefore a question for judicial determination.").

Thus, the Court finds that the arbitration provision in the MOA is not binding on the parties, and that it is appropriate to grant judgment as a matter of law in favor of Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on Pleadings [doc. #15] is **GRANTED**. Plaintiff Unite Here Local 74's claims against Defendant Pinnacle Entertainment, Inc. are **DISMISSED**, **with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [doc. #23] is **DENIED**.

Dated this 10th Day of January, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE